[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10806
Non-Argument Calendar

_____

Agency No. A099-572-222

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 30, 2011
JOHN LEY
CLERK

HAMLET MENDOZA FLORES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 30, 2011)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Hamlet Mendoza Flores, age 28, is a native and citizen of Nicaragua. He entered the United States on September 9, 2001, without inspection in San Diego, California. On January 8, 2009, Immigration and Customs Enforcement ("ICE") took Flores into custody, and on January 22, 2009, ICE served him with a notice to appear, charging him with being subject to removal under Immigration and Naturalization Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). On August 27, 2009, he appeared with counsel before an Immigration Judge ("IJ"), conceded removability and stated that he would apply for withholding of removal.

Flores thereafter applied for asylum as well as withholding of removal under the INA and protection under the Convention Against Torture, (CAT") and presented his application to an IJ on November 5, 2009. The application was based on two events: (1) the December 22, 1987 death of Flores's father, a Sandinista police officer who opposed the regime's Marxist-Leninist ideology and was prevented from leaving the police force; (2) the January 2, 1989 death of Flores's uncle, a civil employee of the Sandinista police, who was killed after expressing his anti-Sandinista political opinion in an argument with an army major.

Flores's application was heard before an IJ on April 6, 2010, at which time he and his mother testified. On direct examination, Flores reiterated the contents

of his application and said that he feared for his safety if returned to Nicaragua. On cross-examination, he admitted that was not politically active in Nicaragua and that for ten-twelve years after his father's death (and his mother had come to the United States), he and his siblings lived safely with his grandparents in Nicaragua, near Managua. Flores's mother, who had been in the United States since 1988 and had become a U.S. citizen, testified that, in 2008, during a visit to Nicaragua, she learned that her husband had been killed because his political opinion differed from the government's, and that her brother's (Flores's uncle's) death occurred on account of her brother's anti-government political opinion.

At the close of the April 6 hearing, the IJ denied Flores's application for asylum—on the ground that it was untimely and Flores failed to establish changed circumstances that would excuse the late filing—withholding of removal and CAT relief and ordered Flores removed because he failed to show that it was more likely than not that his life or freedom would be threatened if returned to Nicaragua.

Flores appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), arguing that the IJ erred in denying withholding of removal. The BIA dismissed his appeal on January 31, 2011, finding no error in the IJ's decision. The BIA found that Flores was not entitled to withholding of removal because he

3

failed to show a clear probability of future persecution, noting that he failed to corroborate his claim that his father and uncle were killed at the hands of the Sandinista government and that his mother had recently gone to Nicaragua without harm. Flores asked the BIA to remand the case to the IJ for further factfinding based on his father's and uncle's death certificates, but the BIA declined his request because the certificates did not confirm that the Nicaraguan government had killed his father and uncle on account of a protected ground.

Flores now petitions this court for review. He raises two issues: whether substantial evidence supports the IJ's and BIA's findings (1) that he failed to show changed or extraordinary circumstances to excuse his late filing for asylum and (2) that he was ineligible for withholding of removal.[1] We consider these issues in order.

## I.

We review our subject matter jurisdiction *de novo*. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). An alien must file his application for asylum within one year of his arrival in the United States, unless he demonstrates the existence of changed circumstances that materially affect his eligibility for asylum

---

[1] In his brief to this court, Flores does not challenge the BIA's denial of CAT relief, and we therefore do not review the ruling. *See Sepulveda v. U.S. Att'y Gen.*, 463 F.3d 1228, 1228 n.2 (11th Cir. 2006) (issue is abandoned when appellant fails to offer argument).

or extraordinary circumstances that relate to the delay in filing. INA § 208(a)(2)(B), (D); 8 U.S.C. § 1158(a)(2)(B), (D). We lack jurisdiction to review the Attorney General's determinations regarding an alien's compliance with the one-year filing deadline, or whether he satisfied one of the statutory exceptions. *See Ruiz*, 479 F.3d at 765; INA § 208(a)(3); 8 U.S.C. § 1158(a)(3). Accordingly, because we lack jurisdiction to review the BIA's filing determination, we dismiss the petition as to the first issue.

## II.

Where the BIA issues its own decision, we review that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009). We review the BIA's legal determinations *de novo*, and subject its factual findings to the substantial evidence test. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860 (11th Cir. 2007). We affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Id*. A denial of relief may only be reversed if the evidence would compel a reasonable fact-finder to conclude that the requisite fear of persecution exists. *Id*.

An alien is entitled to withholding of removal if he demonstrates that his life or freedom would be threatened on account of his race, religion, nationality,

5

membership in a particular social group, or political opinion. *Delgado*, 487 F.3d at 860-61; INA § 241(b)(3); 8 U.S.C. 1231(b)(3). The alien must prove that it is more likely than not that he would be persecuted or tortured upon his return to the country in question. *Delgado*, 487 F.3d at 861. This burden is satisfied by a showing of past persecution in his country based upon a protected ground, which creates a rebuttable presumption of a future threat to the alien's life or freedom, or a future threat to the alien's life or freedom based upon a protected ground. *Id*. Persecution is an extreme concept that requires more than a few isolated incidents of verbal harassment or intimidation. *Id*.

In order to establish fear of future persecution, the alien must prove a subjectively genuine and objectively reasonable fear of persecution. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005). The alien must demonstrate a causal connection between his political opinion and the feared persecution by demonstrating a good reason to fear that he would be singled out for persecution because of that opinion. *Id*.

An alien's credible testimony may be sufficient, without corroboration, to establish eligibility for relief from removal. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006). Where the IJ, however, determines that the alien should provide evidence that corroborates otherwise credible testimony, such

evidence must be provided unless he demonstrates that he does not have the evidence and cannot reasonably obtain the evidence. INA § 240(c)(4)(B); 8 U.S.C. § 1229a(c)(4)(B).

Substantial evidence supports the BIA's denial of withholding of removal because (1) Flores did not provide the corroborating evidence required by the BIA; (2) Flores did not present any evidence that he was personally persecuted; (3) Flores testified that he was not politically active in Nicaragua or the United States; (4) Flores's mother's testimony indicated that the deaths of her husband and brother occurred more than 20 years before the removal hearing; and (5) Flores's mother testified that she twice returned to a Sandinista-governed Nicaragua without incident. Accordingly, the BIA did not err in denying withholding of removal because it found that it was not more likely than not that Flores would be persecuted or tortured due to his political beliefs upon a return to Nicaragua.

PETITION DISMISSED IN PART, DENIED IN PART.